## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Civil Action No. 10-cv-00655-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

      Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH M. WIKLER,
PETER I. WOLD,
JOHN V. MURPHY, and
RUSSELL S. REYNOLDS, JR.,

      Defendants,

OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

      Nominal Defendant.

---

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY DEFENDANTS OPPENHEIMERFUNDS DISTRIBUTOR, INC. AND JOHN V. MURPHY

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND: THE SETTLED REGULATORY REGIME FOR THE
DISTRIBUTION OF MUTUAL FUND SHARES TO INVESTORS ........................... 4

    A.    Regulation Of Distribution Of Mutual Fund Shares Under The Investment
           Company Act .............................................................................................. 4

           1.    SEC Rule 12b-1 ............................................................................... 6

           2.    FINRA Rule 2830(d) ........................................................................ 7

    B.    Regulation Of Investment Advisers Under The Investment Advisers Act ............ 8

    C.    This Carefully-Balanced Federal Regulatory Regime Has Not Changed As
           A Consequence Of The *Financial Planning Association v. SEC* Decision ......... 10

STATEMENT OF RELEVANT FACTS ................................................................... 11

    A.    The Parties ................................................................................................ 11

    B.    The Fund's Rule 12b-1 Plan ........................................................................ 12

    C.    OFDI's Selling Agreements With The Numerous Broker-Dealers That
           Assist In The Distribution Of Fund Shares ..................................................... 13

    D.    Plaintiff's Claims ....................................................................................... 14

    E.    The Same Plaintiff's Identical Section 47(b) Claim Recently Was Rejected
           By Another Federal Court ............................................................................ 16

ARGUMENT ........................................................................................................ 17

I.    PLAINTIFF CANNOT STATE A LEGALLY VIABLE CLAIM UNDER
    SECTION 47(b) OF THE INVESTMENT COMPANY ACT ........................... 18

    A.    Section 47(b) Does Not Create A Distinct Cause Of Action Or Basis For
           Liability ................................................................................................... 18

    B.    Plaintiff Cannot Premise A Section 47(b) Claim On OFDI's Alleged
           Violation Of ICA Section 36(a) .................................................................... 19

    C.    Plaintiff Cannot Premise A Section 47(b) Claim On OFDI's Alleged
           Violation Of SEC Rule 38a-1 ...................................................................... 20

           1.    There is no private right of action under Rule 38a-1 ............................. 21

           2.    OFDI, the sole named defendant in Plaintiff's Section 47(b) claim,
                is not subject to Rule 38a-1 ................................................................ 22

3.      Rule 38a-1 does not require the Fund (or anyone) to oversee retail
        broker-dealers' compliance with the IAA or to guarantee
        compliance with any federal securities law ............................................ 23

D.   Plaintiff Cannot State A Section 47(b) Claim Because He Alleges, At
     Most, That Certain Transactions Performed By Non-Party Broker-Dealers
     Were Unlawful And Not That The Fund's Rule 12b-1 Plan Was Unlawful ....... 25

E.   The Payment Of Rule 12b-1 Fees Pursuant To The Fund's Rule 12b-1
     Plan -- Either By The Fund To ODFI, Or By OFDI To Broker-Dealers --
     Does Not Violate The IAA ............................................................................ 27

        1.      Plaintiff has not alleged that any broker-dealer rendered any
                investment advice with respect to the Fund ............................... 27

        2.      Plaintiff has not alleged that any broker-dealer rendered investment
                advice with respect to investments in the Fund that was not "solely
                incidental" to the broker-dealer's non-advisory services ........................ 28

        3.      Plaintiff has not alleged that the Rule 12b-1 Fees that the Fund
                paid to OFDI, and that OFDI paid to broker-dealers, are "special
                compensation" for investment advice ...................................... 28

        4.      *Financial Planning Association v. SEC* did not suddenly render the
                payment of Rule 12b-1 Fees illegal ......................................... 30

F.   Plaintiff Fails To State A Claim Against OFDI For Restitution Of Past
     Rule 12b-1 Fees Paid To Broker-Dealers ........................................... 31

II.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION
      WITH RESPECT TO PLAINTIFF'S STATE LAW CLAIMS ...................................... 32

CONCLUSION ............................................................................. 33

## TABLE OF AUTHORITIES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ............................................................................19

*Ashcroft v. Iqbal,*
    __ U.S.__, 129 S. Ct. 1937 (2009) ...................................................17

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d Cir. 2007) ..............................................................19

*Berckeley Inv. Group, Ltd. v. Colkitt,*
    455 F.3d 195 (3d Cir. 2006) .........................................................18, 26

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988) ............................................................................32

*Compliance Mktg. v. Drugtest, Inc.,*
    No. 09-1241, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ................17

*Davis v. Bailey,*
    No. 05-42, 2005 WL 3527286 (D. Colo. Dec. 22, 2005) .................20

*DeBruyne v. Equitable Life Assur. Soc.,*
    920 F.2d 457 (7th Cir. 1990) .............................................................32

*Dodds v. Cigna Sec., Inc.,*
    12 F.3d 346 (2d Cir. 1993) ................................................................32

*Drasner v. Thomson McKinnon Sec., Inc.,*
    433 F. Supp. 485 (S.D.N.Y. 1977) ...................................................25

*Dull v. Arch,*
    2005 WL 1799270 (N.D. Ill. July 27, 2005) ....................................18

*Financial Planning Association v. SEC,*
    482 F.3d 481 (D.C. Cir. 2007) ..........................................................10

*Friedlob v. Trustees of the Alpine Mut. Fund Trust,*
    905 F. Supp. 843 (D. Colo. 1995) .....................................................32

*GFF Corp. v. Associated Wholesale Grocers,*
    130 F.3d 1381 (10th Cir. 1997) .........................................................11

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  49 F. Supp. 2d 298 (S.D.N.Y. 1999)........................................................31

*Hamilton v. Allen*,
  396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................18, 20, 25, 27

*In re American Funds Fee Litig.*,
  2009 U.S. Dist. LEXIS 98871 (C.D. Cal. Sept. 16, 2009).....................................5

*In re Ivan F. Boesky Sec. Litig.*,
  825 F. Supp. 623 (S.D.N.Y. 1993) ..........................................................31

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
  434 F. Supp. 2d 233 (S.D.N.Y. 2006)........................................................19

*In re Morgan Stanley and Van Kampen Mut. Fund Secs. Litig.*,
  2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)..................................................5, 6

*In re Mut. Funds Inv. Litig.*,
  384 F. Supp. 2d 845 (D. Md. 2005)..........................................................19

*International Ry. of Cent. Am. v. United Fruit Co.*,
  373 F.2d 408 (2d Cir. 1967)................................................................32

*Jefferies & Co. v. Arkus-Duntov*,
  357 F. Supp. 1206 (S.D.N.Y. 1973)..........................................................23

*Kassover v. UBS AG*,
  619 F. Supp. 2d 28 (S.D.N.Y. 2008)....................................................8, 9, 29

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000)................................................................32

*Krinsk v. Fund Asset Mgmt., Inc.*,
  715 F. Supp. 472 (S.D.N.Y. 1988) ..........................................................30

*Luzerne County Ret. Bd. v. Makowski*,
  627 F. Supp. 2d 506 (M.D. Pa. 2007) ........................................................9

*Maxey v. Rest. Concepts II, LLC*,
  654 F. Supp. 2d 1284 (D. Colo. 2009)........................................................33

*Mutchka v. Harris*,
  373 F. Supp. 2d 1021 (C.D. Cal. 2005) ......................................................20

*Olmsted v. Pruco Life Ins. Co.,*
   283 F.3d 429 (2d Cir. 2002)...................................................................................19

*Peterson v. Grisham,*
   594 F.3d 723 (10th Cir. 2010) ...........................................................................17

*Pfeiffer v. Bjurman, Barry & Assocs.,*
   2004 WL 1903075 (S.D.N.Y. Aug. 27, 2004)....................................................30

*SEC v. Kenton Capital, Ltd.,*
   69 F. Supp. 2d 1 (D. D.C. 1998)....................................................................9, 30

*Seidel v. Lee,*
   954 F. Supp. 810 (D. Del. 1996)........................................................................32

*Smith v. Franklin/Templeton Distrib., Inc.,*
   2010 WL 2348644 (N.D. Cal. June 8, 2010) ............................................. passim

*Snyder v. Murray City Corp.,*
   124 F.3d 1349 (10th Cir. 1997) ..........................................................................32

*Stegall v. Ladner,*
   394 F. Supp. 2d 358 (D. Mass. 2005) .................................................................20

*Tarlov v. Paine Webber Cashfund, Inc.,*
   559 F. Supp. 429 (D. Conn. 1983)......................................................................22

*Thomas v. Metropolitan Life Ins. Co.,*
   2009 WL 2778663 (W.D. Okla. Aug. 31, 2009) .....................................8, 9, 28, 29

*Van Zanen v. Qwest Wireless, LLC,*
   522 F.3d 1127 (10th Cir. 2008) ..........................................................................31

*Waldock v. M.J. Select Global, Ltd.,*
   2004 WL 2278549 (N.D. Ill. Oct. 7, 2004)........................................................22

*Welch v. TD Ameritrade Holding Corp.,*
   2009 WL 2356131 (S.D.N.Y. July 27, 2009) .....................................................27

*Zerman v. Jacobs,*
   510 F. Supp. 132 (S.D.N.Y. 1981) .....................................................................25

## STATUTES/RULES

15 U.S.C. § 80a-1, *et seq.* ...........................................................................................1

15 U.S.C. § 80a-2(a)(6) ..........................................................................................8, 23

15 U.S.C. § 80a-3 ........................................................................................................21

15 U.S.C. § 80a-12(b) ..................................................................................................4

15 U.S.C. § 80a-22(b)(1) ............................................................................................7

15 U.S.C. § 80a-35(a) ................................................................................................19

15 U.S.C. § 80a-37 ....................................................................................................25

15 U.S.C. § 80b-1, *et seq.* ..........................................................................................2

15 U.S.C. § 80b-2(a)(11) ......................................................................................8, 27

15 U.S.C. § 80b-3(a), (c), (e) ...................................................................................8

15 U.S.C. § 80b-5 ........................................................................................................8

15 U.S.C. § 80b-6 ........................................................................................................8

15 U.S.C. § 78c ............................................................................................................8

17 C.F.R. § 270.12b-1, *et seq.* ..............................................................................1, 6

17 C.F.R. § 270.38a-1 ....................................................................................20, 23, 24

17 C.F.R. § 275.202(a)(11)-1 ...................................................................................10

FINRA Rule 2830 ........................................................................................................7

## OTHER AUTHORITIES

Andrew J. Donohue, Director, Division of Investment Management, U.S. Securities and
   Exchange Commission, Keynote Address at the Practicing Law Institute Investment
   Management Institute 2007 (April 12, 2007), *available at*
   http://www.sec.gov/news/speech/2008/spch042408adj.htm. .........................................5, 10

*Bearing of Distribution Expenses by Mutual Funds*, SEC Release No. IC-9915, 1997 WL
   190477 (Aug. 31, 1977) .............................................................................................5

*Bearing of Distribution Expenses by Mutual Funds*, SEC Release No. IC-11414, 1980 WL 20761 (Oct. 28, 1980) ................................................................................................6, 10

*Commission Announces Roundtable Discussion Regarding Rule 12b-1*, SEC Press Release No. 2007-106 (May 29, 2007) ..................................................................................10

*Compliance Programs of Investment Companies and Investment Advisers*, Rel. No. IC-26299 (Dec. 17, 2003), *available at* http://www.sec.gov/rules/final/ia-2204.htm .................22

Final Extension of Temporary Rules, IAA Release No. 626, 43 Fed. Reg. 19224 (May 4, 1978) ...............................................................................................................................9, 29

NASD Notice to Members No. 92-41: *SEC Approval of Amendments to Article III, Section 26 of the NASD Rules of Fair Practice Regarding Limitations on Mutual Fund Asset-Based Sales Charges* (1992) ......................................................................................7

*Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales Charges as Imposed by Investment Companies*, Exchange Act Release No. 30897, 57 Fed. Reg. 30985-02 (July 13, 1992) .......................................................................................7

SCHONFELD & KERWIN, Organization of a Mutual Fund, 49 Bus. Law. 107 (1993) .......................4

## PRELIMINARY STATEMENT

In 1980, the Securities and Exchange Commission ("SEC") enacted Rule 12b-1 (17

C.F.R. § 270.12b-1, *et seq.*) under the Investment Company Act of 1940, as amended, 15 U.S.C.

§ 80a-1, *et seq.* ("ICA"), to provide a framework in which mutual funds (such as nominal

defendant Oppenheimer Gold & Special Minerals Fund (the "Fund")) can make payments from

fund assets to broker-dealers (including a fund's general distributor, such as defendant

OppenheimerFunds Distributor, Inc. ("OFDI")) for distribution-related activities.

In the ensuing three decades, the boards of directors/trustees of more than 70 percent of

mutual funds, acting with the authorization of millions of shareholders of those funds, have

approved the adoption of "Rule 12b-1 Plans" permitting the payment of "Rule 12b-1 Fees" --

which, by Plaintiff's definition, are "asset-based" as opposed to "transaction-based" -- to

hundreds of mutual fund general distributors and thousands of broker-dealers for distribution-

related services provided for the benefit of millions of fund investors.  Not once during these past

three decades has any court or regulator ever held that the payment or receipt of Rule 12b-1 Fees

under a duly-adopted "Rule 12b-1 Plan" is *de facto* unlawful.  But, that is exactly the wholly

unprecedented -- and completely unjustified -- result that Plaintiff seeks to accomplish in this

action.

Plaintiff does not allege that the Fund's Rule 12b-1 Plan was improperly adopted or

renewed, nor does he contend that the recipient broker-dealers failed to perform the distribution-

related services for which they received Rule 12b-1 Fees.  Rather, according to Plaintiff, OFDI

and every other mutual fund general distributor that acted as a conduit for the payment of Rule

12b-1 Fees to a broker-dealer that had not registered under the Investment Advisers Act of 1940,

as amended, 15 U.S.C. § 80b-1, *et seq.* ("IAA")[1] is subject to liability under the ICA.  Under

Plaintiff's theory, OFDI is liable even though it has no obligation to comply with the IAA or

register as an investment adviser under the IAA, nor any obligation under the ICA to assure that

broker-dealers receiving Rule 12b-1 Fees have complied with the IAA's registration

requirements.

Plaintiff's sole federal claim in this case boils down to the following:

- Section 47(b) of the ICA provides Plaintiff with a private right of action to void the Fund's duly-enacted Rule 12b-1 Plan, and thereby prevent payment of any Rule 12b-1 Fees either to OFDI or to broker-dealers that distribute Fund shares, because the broker-dealers purportedly violated the IAA's registration requirement;

- This Section 47(b) remedy is available because OFDI and the Fund's Board of Trustees allegedly did not comply with ICA Section 36(a) and SEC Rule 38a-1, which (according to Plaintiff) require OFDI and the Trustees to "police" the conduct of the broker-dealers that purportedly "act on [the Fund's] behalf";

- The *Financial Planning Association v. SEC* decision prohibits funds from paying asset-based distribution-related Rule 12b-1 Fees to their general distributors and broker-dealers that hold fund shares for their customers.

Recently, however, the Northern District of California squarely rejected Plaintiff's

erroneous premises, which he advanced in a derivative complaint -- identical in substance to the

Complaint here -- against Franklin/Templeton Distributors, Inc. and the Trustees of the Franklin

Custodian Funds.  *Smith v. Franklin/Templeton Distrib., Inc.*, 2010 WL 2348644 (N.D. Cal. June

8, 2010).  In that well-reasoned opinion, the Honorable Phyllis J. Hamilton granted the mutual

---

[1]      Although the linchpin of Plaintiff's Complaint is the allegation that the non-party broker-dealers did not satisfy their registration requirements under the IAA despite receiving the Rule 12b-1 Fees that are the subject matter of this action, Plaintiff has not brought any claims against them.

fund general distributor's Rule 12(b)(6) motion and dismissed claims identical to those that

Plaintiff raises here. In her opinion, Judge Hamilton:

- Rejected Plaintiff's claim that ICA Section 47(b) provides a private right of action
  to void an "illegal" contract, such as a Rule 12b-1 Plan, and held instead that
  Section 47(b) merely provides a "remedy" for a violation of the ICA or any rule
  or regulation thereunder;

- Held that Section 47(b) applies only to a contract that is made, or the performance
  of which involves, a violation of the *ICA* or rule or regulation promulgated
  thereunder -- not a broker-dealer's alleged violation of the *IAA*;

- Held that SEC Rule 38a-1 does not create a private right of action under the ICA,
  cannot serve as a predicate for a Section 47(b) claim, and, in any event, does not
  impose any duty on a mutual fund's trustees or general distributor to assure that
  broker-dealers comply with registration requirements under the IAA;

- Held that the *Financial Planning Association* case is wholly irrelevant to the
  continued legality of Rule 12b-1 Fees paid to broker-dealers.

As demonstrated herein, Plaintiff's Complaint should meet a similar fate. Lacking any

assertion of actual harm to shareholders and bottomed on a meritless and unprecedented set of

legal theories, Plaintiff's claims do not provide the occasion to topple the long-accepted and

lawful regulatory regime and industry practice regarding Rule 12b-1 Fees that have benefited

mutual fund investors for thirty years:

- Section 47(b) of the ICA -- Plaintiff's sole federal claim, which he asserts only
  against OFDI -- is a remedy provision that does not create a distinct cause of
  action or an independent basis of liability. Neither Section 36(a) of the ICA nor
  SEC Rule 38a-1, on which Plaintiff relies, provides a private right of action and
  therefore cannot serve as the necessary predicate for his Section 47(b) claim.
  Moreover, as a matter of law, neither Section 36(a) nor Rule 38a-1 imposes on
  OFDI (or the Fund) the obligation to "police" the conduct of retail broker-dealers
  unaffiliated with the Fund. Thus, having failed to properly allege any predicate
  ICA violation, Plaintiff's Section 47(b) claim necessarily fails as a matter of law
  (*see* I.A.-C. *infra*);

- Section 47(b) is available only where a contract on its face is unlawful because its
  performance necessarily violates the ICA; not, as Plaintiff expressly has alleged,

where non-parties are alleged to have engaged in unlawful activities not contemplated by the challenged contract (*see* I.D. *infra*);

- The underlying premise of the entire Complaint, that Rule 12b-1 fees are *de facto* "special compensation," and that a broker-dealer's receipt of Rule 12b-1 Fees from a fund (through its distributor) automatically requires the broker-dealer to register as an investment adviser under the IAA (and that failure to do so is unlawful), is manifestly incorrect (*see* I.E. *infra*);

- As a matter of law, Plaintiff cannot state a claim for restitution against OFDI because OFDI unquestionably has performed a service in exchange for the allegedly improper payment (*see* I.F. *infra*).

For all of these reasons, the Court should dismiss Plaintiff's federal cause of action against OFDI. The Court also should decline to exercise supplemental jurisdiction over Plaintiff's state law claims (*see* II. *infra*), which are premised on the same set of unsupported allegations and erroneous legal conclusions as his sole federal claim, and dismiss this Complaint in its entirety.[2]

## BACKGROUND: THE SETTLED REGULATORY REGIME FOR THE DISTRIBUTION OF MUTUAL FUND SHARES TO INVESTORS

### A.    Regulation Of Distribution Of Mutual Fund Shares Under The Investment Company Act

Open-end investment management companies, i.e., mutual funds, are pools of assets in which millions of individuals and entities have invested for more than 70 years in order to diversify their investments, obtain professional money management, and obtain economies of

---

[2]    Defendants OFDI and Murphy join in the Motion of Nominal Defendant Oppenheimer Gold & Special Minerals Fund to Dismiss the Complaint Under Rules 12(b)(6) and 23.1, Fed. R. Civ. P., and Mass Gen. Laws Ch. 156D, §7.44. Defendant Murphy joins in the Motion of the Trustee Defendants to Dismiss the Complaint Under Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and Under 28 U.S.C. § 1406(a).

scale on brokerage and other services.[3]  Mutual funds are regulated under the ICA and SEC rules

enacted pursuant thereto.

Section 12(b) of the ICA, 15 U.S.C. § 80a-12(b), prohibits a mutual fund from acting as a

distributor of its shares except through an underwriter.  The SEC interpreted this statute to bar a

fund from using its assets to finance distribution, i.e., promotion and selling activities.[4]  Before

Rule 12b-1 was enacted in 1980, front-end "sales loads" paid by investors reimbursed broker-

dealers for costs associated with the distribution of fund shares.[5]  Other types of securities (e.g.,

stocks) did not have a "sales load" expense.  As a result, in the late 1970's, the mutual fund

industry "was experiencing high redemption rates that were causing mutual fund assets under

management to decrease and expense ratios to increase."[6]  Accordingly, "there was concern that

the fund industry may not survive without the ability to use a small portion of fund assets to

facilitate distribution."[7]

---

[3]   *See* Schonfeld & Kerwin, *Organization of a Mutual Fund*, 49 Bus. Law. 107 (1993).

[4]   *Bearing of Distribution Expenses by Mutual Funds*, SEC Release No. IC-9915, 1997 WL 190477
      (Aug. 31, 1977).

[5]   *See In re Morgan Stanley and Van Kampen Mut. Fund Secs. Litig.*, 2006 WL 1008138, at *4
      (S.D.N.Y. Apr. 18, 2006) ("Prior to the SEC's adoption of Rule 12b-1 in 1980, [distribution]
      charges were typically borne by new investors to a mutual fund, and not by the fund's
      shareholders as a whole.").

[6]   *In re American Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 98871, at *37 n.7 (C.D. Cal. Sept. 16,
      2009).

[7]   Andrew J. Donohue, Director, Division of Investment Management, U.S. Securities and
      Exchange Commission, Keynote Address at the Practicing Law Institute Investment Management
      Institute 2007 (April 12, 2007), *available at*
      http://www.sec.gov/news/speech/2008/spch042408adj.htm.

### 1.   SEC Rule 12b-1

The SEC responded to these concerns in 1980 by adopting Rule 12b-1. Rule 12b-1 sets

forth the basis on which a fund may act as a distributor of its securities and use a percentage of

fund assets to cover distribution expenses.  Under the Rule, a fund can use its assets for

distribution, provided that "any payments made by such company in connection with such

distribution are made pursuant to a written plan describing all material aspects of the proposed

financing of distribution and that all agreements with any person relating to implementation of

the plan are in writing."[8]  Thus, pursuant to a "Rule 12b-1 Plan," a fund can pay "Rule 12b-1

Fees" out of fund assets to "directly or indirectly [] finance[] any activity which is primarily

intended to result in the sale of shares issued by such company, including, but not necessarily

limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing

and mailing of prospectuses to other than current shareholders, and the printing and mailing of

sales literature."[9]  Rule 12b-1 was expected to stimulate the mutual fund industry by permitting a

fund to finance the distribution of its shares over time and over the entire shareholder class,

thereby increasing the amount of investor assets in the fund over which to spread a fund's

expenses, including distribution costs.[10]

Importantly, the SEC's Adopting Release for Rule 12b-1 noted that the Rule does not

restrict the kinds or amounts of distribution-related payments that a fund can make, and "was

---

[8]     17 C.F.R. § 270.12b-1(b).

[9]     *Id.*  A majority of a fund's independent directors/trustees and the majority of a fund's outstanding shares must approve the initial adoption of a Rule 12b-1 Plan.  A Rule 12b-1 Plan may continue from year to year upon the fund's independent directors/trustees' review and approval. *Id.*

[10]    *See In re Morgan Stanley*, 2006 WL 1008138, at *4.

intended to be flexible enough to cover new distribution financing arrangements that might be developed by the mutual fund industry."[11]  To this end, funds began to offer multiple classes of shares having different sales load structures so as to meet the needs of investors.

### 2.   FINRA Rule 2830(d)

Rule 12b-1 does not impose any limits on the type or amount of Rule 12b-1 Fees that a fund may authorize and pay pursuant to its Rule 12b-1 Plan.  However, in 1990, the NASD, predecessor to the Financial Industry Regulatory Authority ("FINRA"), acting in its capacity as the self-regulatory organization for brokerage firms in the United States, proposed an amendment to its Conduct Rule 2830(d) (then Fair Practice Rule 26(d)), to regulate the amount of Rule 12b-1 fees that a broker-dealer member of FINRA could receive, which the SEC then approved in 1992 (hereinafter "FINRA Rule 2830(d)").[12]  Among other provisions not relevant here, FINRA Rule 2830(d) provides that a fund's "asset-based sales charge," which the Rule defines as a fee "paid to finance sales or sales promotion expenses" "deducted from the net assets" of the fund, cannot exceed 0.75% per annum of the average annual net assets of the fund.[13]  FINRA Rule 2830(d) also provides that a fund's "service fee" "for personal service and/or the maintenance of shareholder accounts," such as responding to customer inquiries and providing information regarding their investments, cannot exceed 0.25% per annum of the fund's

---

[11]   *Bearing of Distribution Expenses by Mutual Funds*, SEC Release No. IC-11414, 1980 WL 20761 (Oct. 28, 1980).

[12]   15 U.S.C. § 80a-22(b)(1); *Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales Charges as Imposed by Investment Companies*, Exchange Act Release No. 30897, 57 Fed. Reg. 30985-02 (July 13, 1992).

[13]   FINRA Rule 2830(b)(8), (d)(2)(E)(i).

average annual net assets.[14]   Thus, even though denominated differently, both forms of

permissible Rule 12b-1 Fees under FINRA Rule 2830(d) support the distribution of fund shares

and are "asset-based" rather than transaction/commission-based.

### B.   Regulation Of Investment Advisers Under The Investment Advisers Act

The IAA "regulat[es] only those who are paid for advising others about securities," i.e.,

investment advisers.[15]   The IAA defines an "investment adviser" as "any person who, for

compensation, engages in the business of advising others . . . as to the value of securities or as to

the advisability of investing in, purchasing, or selling securities . . . ."[16]   Among other things, an

"investment adviser" must register with the SEC as such and otherwise comply with the IAA.[17]

On the other hand, a broker-dealer[18] that provides "investment advice" is excluded from

the definition of "investment adviser," and therefore is not subject to the IAA's regulatory

requirements for broker-dealers -- including the requirement to register as an investment adviser

-- if the broker's "performance of *such services [investment advice]* is *solely incidental* to the

conduct of his business as a broker or dealer *and* [the broker] receives *no special compensation*

---

[14]   FINRA Rule 2830(d)(5).   *See* NASD Notice to Members No. 92-41: *SEC Approval of Amendments to Article III, Section 26 of the NASD Rules of Fair Practice Regarding Limitations on Mutual Fund Asset-Based Sales Charges* (1992).

[15]   *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 33 (S.D.N.Y. 2008).

[16]   15 U.S.C. § 80b-2(a)(11)(c).

[17]   15 U.S.C. § 80b-3(a), (c), (e); 15 U.S.C. § 80b-5; 15 U.S.C. § 80b-6.

[18]   In contrast to an "investment adviser," a "broker" is "any person engaged in the business of effecting transactions in securities for the account of others," and a "dealer" is "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise." 15 U.S.C. §80a-2(a)(6), (11) (referring to Securities Exchange Act of 1934, 15 U.S.C. § 78c).

*therefor. . . .*"[19] Determining whether a broker-dealer is exempt from the IAA's registration

requirement involves a three step analysis:

- Is the broker-dealer rendering "investment advice"?  Unless the broker-dealer provides "investment advice" to a client, the broker-dealer is not an "investment adviser" and therefore need not register under the IAA.[20]

- Is the broker-dealer's rendering of such "investment advice" "solely incidental" to the conduct of its business as a broker-dealer?  Investment advice is "solely incidental" to the broker-dealer's business if it is "attendant to" the services that the broker-dealer otherwise provides.[21]

- Did the broker-dealer receive any "special compensation" for rendering the "investment advice"?  Consideration is "special compensation" only if it is a payment *for* the broker-dealer's rendering of investment advice and "only where there is a clearly definable charge for investment advice."[22]  Hence, even though a broker-dealer might receive compensation in a form other than brokerage commissions, i.e., asset-based compensation, unless that compensation is *for* investment advice, it is not "special compensation."

---

[19]   15 U.S.C. § 80b-2(a)(11)(c) (emphasis added). *See Thomas v. Metropolitan Life Ins. Co.*, 2009 WL 2778663, at *3 nn.5-6 (W.D. Okla. Aug. 31, 2009) ("Such services" in the broker-dealer exception refers to "the investment adviser services rendered by the broker or dealer" and "therefor" "refers back to 'such services,' which in turn, refers to the investment adviser services rendered by the broker or dealer.").

[20]   *See Kassover*, 619 F. Supp. 2d at 33, 34 (holding that where plaintiffs failed to allege that broker-dealer provided plaintiffs investment advice, they could not possibly rebut the application of the broker-dealer exception to the IAA).

[21]   *Thomas*, 2009 WL 2778663, at *3-4. Conversely, a broker-dealer that exercises "discretion and control over the underlying investment" provides more than "solely incidental" investment advice. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 14 (D. D.C. 1998).

[22]   *See Thomas*, 2009 WL 2778663, at *9 (Congress described "special compensation" as something other than "brokerage commissions" to differentiate "commissions" as "compensation for closing the sale" from "compensation, such as advice fees, for providing investment advice"); Final Extension of Temporary Rules, IAA Release No. 626, 43 Fed. Reg. 19224, at 19226 (May 4, 1978).  For example, consideration paid to a broker-dealer "in exchange for either (1) transaction-related services -- that is, commissions, or (2) administration of the Fund" is not "special compensation" because there is no identifiable charge for investment advice. *Luzerne County Ret. Bd. v. Makowski*, 627 F. Supp. 2d 506, 573 (M.D. Pa. 2007).

**C.     This Carefully-Balanced Federal Regulatory Regime Has Not Changed As A
Consequence Of The *Financial Planning Association v. SEC* Decision**

Although Rule 12b-1 was expected to provide a short-term solution to the soaring mutual

fund redemptions in the 1970's, Rule 12b-1 Fees have come to play an integral role in the

distribution of most mutual funds' shares.  In adopting Rule 12b-1, the SEC stated that it would

"monitor the operation of the rules closely and will be prepared to adjust the rules in light of

experience."[23]  And, indeed, over the last few years, the SEC has acknowledged its intent to

review the Rule with the utmost care.[24]  But, the SEC has never amended or supplemented Rule

12b-1 to prohibit funds from paying the asset-based Rule 12b-1 Fees to general distributors and

broker-dealers that funds have paid for the past 30 years.

The 2007 case decided by the Court of Appeals for the District of Columbia Circuit

prominently featured in Plaintiff's Complaint as the basis for his mischaracterization of Rule

12b-1 Fees as "special compensation," *Financial Planning Association v. SEC*, 482 F.3d 481

(D.C. Cir. 2007), has not prompted the SEC to revise or rescind any aspect of Rule 12b-1.  The

fact that the SEC has taken no such action in response to the decision is unsurprising, however,

because the case concerned an SEC rule (17 C.F.R. § 275.202(a)(11)-1) that purported to

broaden the IAA broker-dealer registration exception.  The SEC rule at issue in *Financial

Planning Association* did *not* relate to the ICA, Rule 12b-1 Plans, or Rule 12b-1 Fees.

Accordingly, the Court of Appeals' decision contains no discussion of Rule 12b-1 Plans or the

---

[23]     SEC Release No. IC-11414.

[24]     *See, e.g., Commission Announces Roundtable Discussion Regarding Rule 12b-1*, SEC Press
Release No. 2007-106 (May 29, 2007) (announcing discussion regarding, *inter alia*, "the costs
and benefits of the current use of Rule 12b-1" and "the options for reform or rescission of Rule
12b-1"); Keynote Address at Practicing Law Institute Investment Management Institute 2008
(discussing the SEC's approach to considering reform or repeal of Rule 12b-1).

payment of any type of Rule 12b-1 Fees.  Indeed, as the *Franklin Templeton* court recently

recognized, *Financial Planning Association* had no impact whatsoever on the continued

propriety of a fund's payment of Rule 12b-1 Fees.  2010 WL 2348644, at *8.

## STATEMENT OF RELEVANT FACTS

### A.    The Parties

Plaintiff alleges that since June 2006, he has beneficially owned (through a brokerage

account at non-party Merrill Lynch, which is the record owner) an unspecified number of Class

C[25] shares of the Fund.  Compl. ¶ 10.  The Fund, i.e., the nominal defendant, is a Massachusetts

business trust that is registered as an "investment company" under the ICA.  *Id.* ¶ 11.

The eleven individually-named defendants were, between July 22, 2005, and March 19,

2010, Trustees of the Fund.  Defendants John V. Murphy and Russell S. Reynolds, Jr. were

"interested" Trustees and the nine others were "independent" trustees.  *Id.* ¶¶ 12-22.[26]

OFDI, a New York corporation with its headquarters and principal place of business in

New York City, is a registered broker-dealer that acts as the principal underwriter and distributor

for the Fund, as well as other Oppenheimer mutual funds.  *Id.* ¶ 23.

---

[25]    The Fund offers investors four different classes of shares: Class A, Class B, Class C, and Class N. The different classes represent investments in the same portfolio of securities but are subject to different expenses, which are set out in the Fund's prospectus. *See, e.g.,* October 26, 2007 Prospectus, Oppenheimer Gold & Special Minerals Fund (the "2007 Prospectus"), at 19-29 (attached to the Declaration of Robert G. Zack in Support of Motion to Dismiss ("Zack Decl.") at Exh. C). The Court may properly consider this and the other documents included with the Zack Declaration as part of a Rule 12(b)(6) motion. *See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[26]    Mr. Reynolds was an "interested" Trustee for only a portion of the challenged period.

**B.     The Fund's Rule 12b-1 Plan**

As Rule 12b-1 permits, the Fund distributes all classes of its shares through a distributor,

OFDI.  The Class C shares held by Plaintiff are distributed pursuant to a December 10, 1992

General Distributor's Agreement ("Distribution Agreement") between the Fund and OFDI, and

an October 26, 2005 Amended and Restated Distribution and Service Plan and Agreement for

Class C Shares of Oppenheimer Gold & Special Minerals Fund (the "Rule 12b-1 Plan").[27]

As detailed in those agreements, the Fund has designated OFDI to provide specified

services in connection with the distribution of the Fund's Class C shares.  Pursuant to the Rule

12b-1 Plan, the Fund pays OFDI two categories of compensation for its distribution services: a

"Distribution Assistance Fee (Asset-Based Sales Charge)" and an "Administrative Support

Service Fee."  The "Distribution Assistance Fee (Asset-Based Sales Charge)" of up to 0.0625%

per month (0.75% on an annual basis) of average annual net assets of Class C shares

"compensate[s OFDI] for providing distribution assistance in connection with the sale of [Class

C] shares" such as "paying sales commissions to any broker, dealer . . . that sells [Class C]

Shares . . . ."  Rule 12b-1 Plan § 3(a)(ii).  The "Administrative Support Service Fee"

compensates OFDI in an amount of up to 0.25% on an annual basis of the average net asset value

of Class C shares for providing "administrative support services."  *Id.* § 3(a)(i).

The Rule 12b-1 Plan also expressly authorizes OFDI to pay broker-dealers both a

"Distribution Assistance Fee (Asset-Based Sales Charge)" and a "Service Fee" as a percentage

of the Fund's aggregate net asset value for Class C shares (both of which are thus asset-based as

---

[27]     Copies of the Distribution Agreement and the Fund's Rule 12b-1 Plan for Class C shares are
attached to the Zack Declaration as Exhs. A and B, respectively.

opposed to transaction-based). *Id.* § 3(b). The "Distribution Assistance Fee (Asset-Based Sales

Charge)" compensates broker-dealers for rendering "distribution assistance" such as

"distributing sales literature and prospectuses other than those furnished to current Shareholders,

providing compensation to and paying expenses of personnel . . . who support the distribution of

Shares by the [broker-dealer], and providing such other information and services in connection

with the distribution of Shares as [OFDI] or the Fund may reasonably request." *Id.* § 3(b)(ii).

The "Service Fee" compensates broker-dealers for rendering "administrative support services . . .

in connection with [customer] accounts," such as "answering routine inquiries concerning the

Fund, assisting in the establishment and maintenance of accounts or sub-accounts in the Fund

and processing Share redemption transactions, making the Fund's investment plans and dividend

payment options available, and providing such other information and services in connection with

the rendering of personal services and/or maintenance of Accounts, as [OFDI] or the Fund may

reasonably request." *Id.* § 3(b)(i).[28]

## C.   OFDI's Selling Agreements With The Numerous Broker-Dealers That Assist In The Distribution Of Fund Shares

As the Rule 12b-1 Plan expressly contemplates, OFDI entered into selling agreements

with more than 1,800 broker-dealer firms that assist in the distribution of Fund shares, including

Class C shares.  Pursuant to the Fund's Rule 12b-1 Plan, OFDI may pay broker-dealers Rule

---

[28]   At all relevant times, the Fund's publicly-disseminated and SEC-filed prospectuses and Statements of Additional Information ("SAIs") have described in detail the Rule 12b-1 Fees that the Fund pays to OFDI under the Rule 12b-1 Plan, as well as OFDI's corresponding obligations to the Fund. *See, e.g.*, 2007 Prospectus at 19, 26-27 (Zack Decl. at Exh. C); October 26, 2007 SAI, Oppenheimer Gold & Special Minerals Fund (the "2007 SAI"), at 48-52 (Zack Decl. at Exh. D). Those public filings also indicate that, pursuant to the Fund's Rule 12b-1 Plan, OFDI may in turn pay the Rule 12b-1 Fees that it received from the Fund to retail broker-dealers that distribute Fund shares. *See, e.g.*, 2007 Prospectus at 26-27; 2007 SAI at 48-52.

12b-1 Fees in the forms of an "Asset-Based Sales Charge" and a "Service Fee" (both of which, as explained above, are asset-based as opposed to transaction-based) in exchange for the broker-dealers' efforts in support of the distribution of Fund shares and maintenance of client accounts holding Fund shares.[29]

Neither the Rule 12b-1 Plan, the Fund's publicly-available offering documents, nor OFDI's selling agreements with the many broker-dealers that assist in the distribution of the Fund's shares, contemplate, require, or suggest that any of the Rule 12b-1 Fees that the Fund pays pursuant to its Rule 12b-1 Plan are intended to, or actually do, compensate OFDI or broker-dealers for providing investment advice to Fund shareholders.[30]

### D.   Plaintiff's Claims

Plaintiff asserts four causes of action derivatively on behalf of the Fund -- two against OFDI and two against the Trustees -- all of which rest on the same flawed legal premise.

According to Plaintiff, even though the Fund, through its Rule 12b-1 Plan, "is financing distribution activities, including making compensation payments to broker-dealers for sales of [Fund] shares and for on-going servicing of shareholders, out of [Fund] assets, **as allowed by SEC Rule 12b-1**" (Compl. ¶ 48; emphasis added), those payments are "illegal" because the non-party broker-dealers that received the Rule 12b-1 Fees pursuant to the Fund's Rule 12b-1 Plan did not register as advisers under the IAA to enable them to offer "advisory accounts." *See, e.g.,*

---

[29]   *See, e.g.,* Ameriprise Financial Services, Inc. Selling Agreement ("Ameriprise Agreement") § 2(b) (Zack Decl. Exh. E).

[30]   In addition, contrary to Plaintiffs' unsubstantiated allegations (e.g., Compl. ¶¶ 47, 49, 50, 66-67, 69, 71-73, 75, 80, 84), the selling agreements expressly state that the broker-dealer is *not* an agent of OFDI, whether generally or with specific reference to its performance of Rule 12b-1 services. *See, e.g.,* Ameriprise Agreement § 7.

Compl. ¶¶ 4-5, 28-30, 37, 51-52, 66. Plaintiff then concludes that because the broker-dealers'

receipt of the Rule 12b-1 Fees violated the IAA, the authorization and payment of such fees by

the Fund's Trustees and OFDI violated the ICA and SEC Rule 38a-1. *See, e.g.*, Compl. ¶¶ 50,

52, 68.

Plaintiff's Complaint, while long on conclusory (and as demonstrated herein, completely

erroneous) legal assertions, is revealingly short on particularized factual allegations with respect

to Plaintiff or Defendants. For example, Plaintiff devotes a great deal of his Complaint to setting

forth his misguided legal opinion that the IAA under all circumstances prohibits broker-dealers

from receiving "asset-based compensation" with respect to mutual fund shares held in brokerage

accounts. *See, e.g.*, Compl. ¶¶ 4, 28-29, 50-52, 66, 69. However, Plaintiff does not allege that

he or *any* Fund shareholder ever received *any* investment advice from *any* broker-dealer with

respect to *any* investment in the Fund. Similarly, despite the undeniable fact that OFDI is not

subject to the IAA or SEC Rule 38a-1, Plaintiff repeatedly advances his legal conclusion that

OFDI must ensure that thousands of unaffiliated broker-dealers comply with their own putative

registration obligations under the IAA as imaginatively interpreted by Plaintiff. Compl. ¶¶ 43,

46, 52.

Of Plaintiff's four causes of action,[31] only the first -- brought solely against OFDI for

"contract voiding pursuant to Section 47(b) of the ICA" -- purports to arise under federal law.

Through this claim, Plaintiff seeks "to void the broker-dealer compensation provisions" in the

Rule 12b-1 Plan. *See* Compl. ¶ 68. Plaintiff further alleges that all payments of Rule 12b-1 Fees

---

[31]    Plaintiff also asserts state law claims for breach of contract against OFDI, and breach of fiduciary
duty and waste of trust assets against the Trustee Defendants, each of which is premised on the
same purported facts underlying Plaintiff's Section 47(b) claim.

- 15 -

to retail broker-dealers pursuant to the Fund's Rule 12b-1 Plan since October 2007 constitute unjust enrichment to be restituted to the Fund. Compl. ¶ 69.

Inexplicably, although the retail broker-dealers are the alleged primary wrongdoers in Plaintiff's story, they are not named as defendants, nor does Plaintiff seek any judicial relief with respect to the various selling agreements between OFDI and those broker-dealers pursuant to which the broker-dealers, among other things, distribute Fund shares in return for the allegedly "illegal" Rule 12b-1 Fees.

### E. The Same Plaintiff's Identical Section 47(b) Claim Recently Was Rejected By Another Federal Court

On June 8, 2010, the Honorable Phyllis J. Hamilton of the Northern District of California issued a decision in *Smith v. Franklin/Templeton Distributors, Inc.*, 2010 WL 2348644 (N.D. Cal. June 8, 2010), dismissing a nearly identical complaint filed by the same plaintiff as here (Bradley Smith) represented by the same lead outside counsel as here (Milberg LLP). In *Franklin Templeton*, Plaintiff derivatively asserted the same causes of action as here, including his federal ICA Section 47(b) claim, based upon a set of factual allegations indistinguishable from those here. *Id.* at *6-7. Plaintiff predicated his Section 47(b) claim in *Franklin Templeton*, as here, on the distributor's alleged violation of ICA Section 36(a) and SEC Rule 38a-1. *Id.* at *4. After careful analysis, Judge Hamilton granted the distributor's motion to dismiss Plaintiff's Section 47(b) claim for many of the same reasons that Defendants advance herein. Specifically, Judge Hamilton held that:

- Section 47(b) provides only a remedy and can be asserted only in conjunction with a violation of some other section of the ICA;

- The Section 47(b) remedy cannot be predicated on a violation of the IAA;

- Rule 38a-1 does not create a private right of action;

- Rule 38a-1 only requires funds to adopt and implement certain compliance procedures and policies, not to "police" broker-dealers' compliance with the securities laws; and

- Rule 38a-1 "does not impose on funds a duty to assure that the broker-dealers comply with registration requirements."

*Id.* at *8. After disposing of Plaintiff's Section 47(b) claim, Judge Hamilton declined to exercise supplemental jurisdiction over the state law claims and dismissed the complaint. *Id.*[32]

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient allegations that, if accepted as true, state a claim for relief. *Ashcroft v. Iqbal*, __ U.S.__, 129 S. Ct. 1937, 1949 (2009); *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). The complaint must plead facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 129 S. Ct. at 1949; *Compliance Mktg. v. Drugtest, Inc.*, No. 09-1241, 2010 WL 1416823, at *18 (D. Colo. Apr. 7, 2010) (Kane, J.). Even where no fraud is alleged (such that Fed. R. Civ. P. 9 would apply), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft*, 129 S. Ct. at 1950.

As demonstrated below, Plaintiff has not alleged any set of facts that would permit him to succeed on his sole federal claim brought pursuant to ICA Section 47(b) against OFDI. This Court therefore can and should grant Defendants' motion to dismiss the Complaint.

---

[32] Plaintiff was granted leave by the *Franklin Templeton* court to amend his Section 47(b) claim by no later than July 7, 2010. 2010 WL 2348644, at *8. In the present case, Plaintiff has confirmed that he intends to stand on his current pleading and will not be seeking leave to file the amended complaint that he shortly will be filing in the *Franklin Templeton* case. *See* Declaration of David A. Kotler In Support Of Motion to Dismiss at ¶ 2.

I.   **PLAINTIFF CANNOT STATE A LEGALLY VIABLE CLAIM UNDER SECTION 47(b) OF THE INVESTMENT COMPANY ACT**

Plaintiff's Section 47(b) claim, styled as "contract voiding pursuant to Section 47(b) of the ICA," suffers from a number of fundamental legal infirmities, each of which is independently fatal to Plaintiff's Section 47(b) claim.

A.   **Section 47(b) Does Not Create A Distinct Cause Of Action Or Basis For Liability**

To state a cause of action under Section 47(b), a plaintiff must first allege "a violation of 'any provision of the [ICA] or of any rule, regulation, or order thereunder.'" *Franklin Templeton*, 2010 WL 2348644, at *7 (quoting 15 U.S.C. § 80a-46(b)).  Put another way, Section 47(b) "does not provide for an independent cause of action where no violation of the ICA has occurred." *Dull v. Arch*, 2005 WL 1799270, at *3 (N.D. Ill. July 27, 2005).  Moreover, a broker-dealer's alleged violation of a completely different Act -- the IAA -- cannot give rise to a claim under Section 47(b) of the ICA.  *See Franklin Templeton*, 2010 WL 2348644, at *7.

Hence, Section 47(b) "itself does not define a substantive violation of the securities laws. Rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions" of the ICA. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006).  Accordingly, in the absence of a properly alleged violation of any provision of the ICA or any rule under the ICA, a plaintiff's Section 47(b) claim must be dismissed as a matter of law. *See Franklin Templeton*, 2010 WL 2348644, at *8 (dismissing Section 47(b) claim "[b]ecause the complaint alleges no violation of the ICA which can provide a predicate for the claim under § 47(b) . . . ."); *Hamilton v. Allen*, 396 F.

Supp. 2d 545, 558 (E.D. Pa. 2005) ("to the extent Plaintiffs' other Investment Company Act

claims fail, their Section 47(b) claim must necessarily fail").

**B.      Plaintiff Cannot Premise A Section 47(b) Claim On OFDI's Alleged Violation Of ICA Section 36(a)**

Plaintiff's tacit suggestion that OFDI violated Section 36(a) of the ICA (*see* Compl. ¶¶

38, 39, 53, 65) is a legally insufficient predicate for his Section 47(b) claim against OFDI.  By its

express terms, Section 36(a) permits only the SEC, *not* private litigants, to bring an action

against fund officers, directors, advisory board members, investment advisers, depositors, or

principal underwriters for certain breaches of fiduciary duties.  15 U.S.C. § 80a-35(a).[33]

Congress must create a private right of action to enforce federal law.  *Alexander v. Sandoval,* 532

U.S. 275, 286 (2001).  And, "[w]ithout congressional intent, a cause of action does not exist and

courts may not create one, no matter how desirable that might be as a policy matter, or how

compatible with the statute."  *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002)

(finding no private right of action under Sections 26 and 27 of ICA) (citation omitted).  Thus, the

courts that have considered the issue in the wake of *Sandoval* unanimously have held that

Section 36(a) does not provide an implied private right of action for Fund shareholders such as

Plaintiff.  *See, e.g., Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007); *In re*

*Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 239 (S.D.N.Y. 2006); *In re*

*Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 870 (D. Md. 2005).

---

[33]     Our research has not revealed any instance in which the SEC has brought a Section 36(a) action against any mutual fund, distributor, or trustee for failing to ensure that broker-dealers in receipt of Rule 12b-1 Fees register under the IAA.

This absence of a private right of action is fatal to Plaintiff's Section 47(b) claim.  Courts consistently have held that a claim brought pursuant to Section 47(b) of the ICA must "necessarily fail" where the underlying statute or rule through which plaintiff purports to establish his Section 47(b) claim -- such as Section 36(a) -- does not itself provide a private right of action.  *See, e.g., Franklin Templeton*, 2010 WL 2348644, at *7; *Davis v. Bailey*, No. 05-42, 2005 WL 3527286, at *5-6 (D. Colo. Dec. 22, 2005) (dismissing Section 36(a) claim because "there is no private right of action" and holding "[s]ince Plaintiffs' other claims under the ICA were dismissed, this [Section 47(b)] claim is also subject to dismissal"); *Hamilton*, 396 F. Supp. 2d at 558 (dismissing Section 47(b) claim because plaintiffs' Section 36(a) claim did not provide a private right of action).[34]

Thus, as a matter of law, Plaintiff cannot rely on any alleged violation of Section 36(a) as a predicate for his Section 47(b) claim against OFDI.

### C.  Plaintiff Cannot Premise A Section 47(b) Claim On OFDI's Alleged Violation Of SEC Rule 38a-1

SEC Rule 38a-1, which is entitled "*Compliance Procedures and Practices of Certain Investment Companies*," applies only to "registered investment compan[ies] and business development compan[ies]."  17 C.F.R. § 270.38a-1 (emphasis added).  The Fund is a "registered investment company" (*see* Compl. ¶¶ 2, 11); OFDI is not, and neither are any of the retail

---

[34]     *Accord Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (finding no private right of action under Section 36(a) and holding that "[s]ince the Court has already determined that the [plaintiffs'] other ICA claims must be dismissed, the claim under Section 47(b) necessarily fails" (citation omitted)); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass. 2005) (dismissing Section 36(a) claim for lack of a private right of action and holding "[c]onsequently, having insufficiently pled his [ICA] causes of action, plaintiff's Section 47(b) claim also fails.").

broker-dealers that are alleged to have received Rule 12b-1 Fees pursuant to the Fund's Rule

12b-1 Plan. *See* 15 U.S.C. § 80a-3.

Rule 38a-1 requires the "registered investment company" -- viz., the Fund -- to do the

following:

> [1] adopt and implement written policies and procedures that are
> designed to prevent violation of the federal securities laws by the
> fund, including policies and procedures that provide for the
> oversight of compliance by each investment advisor, principal
> underwriter, administrator, and transfer agent of the fund; [2]
> obtain the approval of the fund's board of directors, including a
> majority of the directors who are not interested persons of the fund,
> of the policies and procedures; [3] annually review the adequacy of
> the policies and procedures; and [4] designate an individual
> responsible for administering the policies and procedures, who will
> issue an annual written report on the operation of the policies and
> procedures and on any "material compliance matter" that has
> arisen since the date of the last report.

*See Franklin Templeton*, 2010 WL 2348644, at *4 (citing 17 C.F.R.§ 270.38a-1).  Plaintiff seeks

to extrapolate a Section 47(b) claim from an unprecedented expansion of Rule 38a-1. But, his

claim that Rule 38a-1 provides the requisite underlying violation of an ICA rule for purposes of

his Section 47(b) claim against OFDI fails for any of several dispositive reasons.

### 1. There is no private right of action under Rule 38a-1

As the *Franklin Templeton* court properly recognized, an alleged violation of Rule 38a-1

cannot serve as a predicate for Plaintiff's Section 47(b) claim because, like ICA Section 36(a),

Rule 38a-1 does not provide a private right of action.  Congress did not provide a private right of

action under Rule 38a-1, and Plaintiff cannot allege or show otherwise.  The Rule, its Adopting

- 21 -

Release,[35] and legislative history are all totally barren of any rights-creating language. Without a private right of action, Plaintiff, as a matter of law, cannot predicate his Section 47(b) claim on an alleged violation of Rule 38a-1. *See Franklin Templeton*, 2010 WL 2348644, at *6-8. Any determination to the contrary would create a back-door private right of action under Rule 38a-1 in derogation of Congressional intent and Supreme Court precedent. *See Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 n.9 (D. Conn. 1983) (dismissing Section 47(b) claim where alleged underlying securities laws violations did not provide a private right of action and finding plaintiff "improper[ly] attempt[ed] to imply a right of action under that section").[36]

## 2. OFDI, the sole named defendant in Plaintiff's Section 47(b) claim, is not subject to Rule 38a-1

Even apart from its lack of a private right of action, Rule 38a-1 cannot serve as the predicate for Plaintiff's Section 47(b) claim because the Rule does not require a fund's distributor (such as OFDI) to undertake *any* responsibilities to oversee anyone, let alone third-party broker-dealers. OFDI is not a "registered investment company" or "business development company." Thus, irrespective of any alleged Rule 38a-1 violation by the Fund's Trustees (which, as demonstrated below, is itself a nonsensical contention), OFDI cannot violate Rule 38a-1. Plaintiff therefore cannot use an alleged violation of Rule 38a-1 as the premise for his Section 47(b) claim against OFDI. *See Franklin Templeton*, 2010 WL 2348644, at *6-8; *Waldock v. M.J. Select Global, Ltd.*, 2004 WL 2278549, at *5 (N.D. Ill. Oct. 7, 2004)

---

[35]   *Compliance Programs of Investment Companies and Investment Advisers*, Rel. No. IC-26299 (Dec. 17, 2003) ("Adopting Release"), *available at* http://www.sec.gov/rules/final/ia-2204.htm.

[36]   To the extent the *Tarlov* court, in *dicta*, implied that Section 47(b) might potentially "serve as the basis for an implied right of action," all subsequent courts that considered the issue have held that no such private right of action exists under Section 47(b). *See* I.A.-B., *supra*.

(dismissing Section 47(b) claim where underlying cause of action did not apply to the defendant against whom Section 47(b) claim was asserted).

> **3.      Rule 38a-1 does not require the Fund (or anyone) to oversee retail broker-dealers' compliance with the IAA or to guarantee compliance with any federal securities law**

Plaintiff asserts that Rule 38a-1 requires OFDI and/or the Fund's Trustees to police thousands of broker-dealers to ensure that each one complies with all federal securities laws, including the IAA. *E.g.*, Compl. ¶¶ 39, 40, 46, 52. Rule 38a-1, however, does not saddle a fund's trustees (let alone a fund's distributor) with any duty to ensure that a broker-dealer complies with its obligations under the federal securities laws.

To the contrary, Rule 38a-1 only requires a fund to adopt and implement policies and procedures reasonably designed to prevent the fund and certain specified service providers from violating the federal securities laws; those service providers are *only* the fund's "investment advisor, principal underwriter, administrator, and transfer agent." 17 C.F.R. § 270.38a-1(a)(1)-(4). A broker-dealer is *not* an "investment advisor," "principal underwriter," "administrator," or "transfer agent" of the Fund, and as such is *not* encompassed by Rule 38a-1.[37]

Tellingly, neither the SEC nor any court ever has held, contrary to the plain language of Rule 38a-1, that a fund's trustees have the obligation (as Plaintiff alleges) to "police" an unaffiliated broker-dealer's compliance with the broker-dealer's own registration obligations

---

[37]      Nor are broker-dealers "agents" of the Fund or OFDI, as Plaintiff alleges. *See* Compl. ¶¶ 47, 49, 50, 66-67, 69, 71-73, 75, 80, 84. Brokers act as agents of their customers, and dealers act on their own behalf. *See* 15 U.S.C. § 80a-2(a)(6) (defining "broker" as "any person engaged in the business of effecting transactions in securities for the *account of others*") (emphasis added); *Jefferies & Co. v. Arkus-Duntov*, 357 F. Supp. 1206, 1213 (S.D.N.Y. 1973) ("[A] broker is an agent for his customer."). Moreover, the agreements between OFDI and the broker-dealers that distribute Fund shares explicitly provide that the broker-dealers are agents of their customers -- i.e., the Fund's shareholders -- not the Fund or OFDI. *See, e.g.*, Ameriprise Agreement § 7.

under the IAA. Thus, the conclusion reached in *Franklin Templeton* that "Rule 38a-1 does not impose on funds a duty to assure that the broker-dealers comply with registration requirements" (2010 WL 2348644, at *8) is appropriate here as well, rendering Plaintiff's claim that the Trustees violated their obligations under Rule 38a-1 allegedly by failing to "police" the broker-dealers defective as a matter of law.

Even assuming, *arguendo*, that payment of Rule 12b-1 Fees to broker-dealers not registered under the IAA somehow violates the federal securities laws, Plaintiff still fails to allege that the Trustees violated their Rule 38a-1 obligations. Rule 38a-1 does not require the Fund's Trustees (or OFDI) to thwart all potential infractions of the federal securities laws, nor does it hold them strictly liable for any such violation, particularly by third parties. To the contrary, Rule 38a-1 requires only that a fund's trustees "adopt and implement" policies and procedures reasonably designed to prevent *the Fund's* violation of the federal securities laws. 17 C.F.R. § 270.38a-1.

Plaintiff does not even attempt to allege that the Fund lacked appropriate Rule 38a-1 policies and procedures, or that the Trustees failed to review the compliance policies of the applicable service providers (which does *not* include the retail broker-dealers that received the Rule 12b-1 Fees). Indeed, just as the *Franklin Templeton* court held, "Rule 38a-1 lists various duties that are imposed on registered investment companies," yet "plaintiff has pled no facts identifying any defect in the [fund's] Rule 38a-1-related compliance policies and procedures."

2010 WL 2348644, at *7.  This court should reach the same conclusion and reject Plaintiff's

attempt to rewrite Rule 38a-1.[38]

### D.   Plaintiff Cannot State A Section 47(b) Claim Because He Alleges, At Most, That Certain Transactions Performed By Non-Party Broker-Dealers Were Unlawful And Not That The Fund's Rule 12b-1 Plan Was Unlawful

Courts evaluating claims for contract rescission under the federal securities laws

distinguish "between violations that are 'collateral or tangential' to the contract sought to be

rescinded and those violations that are 'inseparable from the performance of the contract,'

finding rescission inappropriate in the former case and appropriate in the latter." *Hamilton*, 396

F. Supp. 2d at 559 (quoting *GFL Adv. Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir. 2001)).

As one court succinctly recognized, "only unlawful *contracts* may be rescinded, not unlawful

*transactions* made pursuant to lawful contracts." *Zerman v. Jacobs*, 510 F. Supp. 132, 135

(S.D.N.Y. 1981) (emphasis added), *aff'd w/o op.,* 672 F.2d 901 (2d Cir. 1981).  Thus, contract

rescission under Section 47(b) only "void[s] those contracts which by their terms violate the Act

. . . for it is only such contracts which are made 'in violation of,' or 'the performance of which

involves a violation of' the statute and the rules and regulations thereunder." *Drasner v.*

*Thomson McKinnon Sec., Inc.*, 433 F. Supp. 485, 501-2 (S.D.N.Y. 1977).

Here, Plaintiff *concedes* the propriety of the Fund's Rule 12b-1 Plan when he properly

alleges that the Fund "is financing distribution activities, including making compensation

---

[38]   Plaintiff's claims are also barred by ICA Section 38(c), 15 U.S.C. § 80a-37, because the Fund's payments of Rule 12b-1 Fees were made "in good faith in conformity" with Rule 12b-1.  Section 38(c) provides that "[n]o provision of this subchapter [ICA] imposing any liability shall apply to any act done . . . in good faith in conformity with any rule, regulation or order of the Commission . . . ."  15 U.S.C. § 80a-37.  Plaintiff has not alleged that OFDI or the Fund's Trustees undertook any action that did not comply with Rule 12b-1, let alone that any of them acted other than in good faith.

payments to broker-dealers for sales of [Fund] shares and for on-going servicing of shareholders, out of [Fund] assets, **as allowed by SEC Rule 12b-1**." Compl. ¶ 48 (emphasis added). Similarly, Plaintiff does not assert that payment by OFDI or receipt by broker-dealers of Rule 12b-1 Fees, standing alone, was illegal or improper. Rather, Plaintiff alleges that broker-dealers violated the IAA by failing to register while in receipt of Rule 12b-1 Fees and that Defendants, in turn, contravened the ICA (Section 36(a) and Rule 38a-1) by making or authorizing the payments without also ensuring that broker-dealers met their alleged IAA registration requirements. In short, Plaintiff's labyrinthine allegations of violations fail to include any allegation that the Rule 12b-1 Plan or the Distribution Agreement are themselves illegal.

Instead, even according to Plaintiff's own allegations, any purported violation of the IAA by the broker-dealers is purely "collateral" and "tangential" to the Rule 12b-1 Plan and the Distribution Agreement because the broker-dealers' purported registration obligations did not arise upon execution or even performance of either the Rule 12b-1 Plan or the Distribution Agreement. Rather, the broker-dealers' IAA registration obligations only could have been triggered by the retail broker-dealers' execution and performance of separate and distinct agreements with each of their *own customers* and the provision of "advisory services" pursuant thereto.

The broker-dealers' alleged failure to register under the IAA is a classic example of contract performance that is "collateral" and "tangential" to the contract for which rescission is sought (the Fund's Rule 12b-1 Plan). Plaintiff's claim therefore fails as a matter of law. *See Berckeley Inv. Group*, 455 F.3d at 205, 207 (recognizing that "unlawful transactions made pursuant to lawful contracts do not fall within the ambit of Section 29(b)," and dismissing

rescission claim where "[a]t the time the parties entered into the Agreement, the Agreement

could be performed without violating provisions of the securities laws"); *Hamilton*, 396 F. Supp.

2d. at 559 (holding "that any alleged breach of fiduciary duty with respect to failure to collect

settlement payments is too attenuated from the advisory contracts to warrant rescission under

Section 47(b)").

> **E.    The Payment Of Rule 12b-1 Fees Pursuant To The Fund's Rule 12b-1 Plan --
> Either By The Fund To ODFI, Or By OFDI To Broker-Dealers -- Does Not
> Violate The IAA**

Even apart from all of the fundamental legal fallacies of his Section 47(b) claim, Plaintiff

is wrong as a matter of law that the non-party broker-dealers that received Rule 12b-1 Fees (all

of which, by definition, are "asset-based") from OFDI without registering as investment advisers

violated the IAA.

> **1.    Plaintiff has not alleged that any broker-dealer rendered any
> investment advice with respect to the Fund**

Unless Plaintiff sufficiently alleges that he or any Fund shareholder received investment

advice with respect to the Fund from a "person[] who for compensation engage[s] in the business

of advising others . . . as to the advisability of investing in, purchasing, or selling securities . . .",

he cannot state a claim against anyone for an underlying violation of the IAA.  15 U.S.C. § 80b-

2(a)(11); *Welch v. TD Ameritrade Holding Corp.*, 2009 WL 2356131, at *28 (S.D.N.Y. July 27,

2009) (finding IAA claim deficient because "Plaintiffs do not allege that they received

investment advisory services from Defendants").

Here, Plaintiff has not alleged that his, or any, broker-dealer provided him, or any other

Fund shareholder, with investment advice regarding any investment in the Fund.  Thus, Plaintiff

cannot possibly state a claim for a violation of the IAA.

**2.      Plaintiff has not alleged that any broker-dealer rendered investment advice with respect to investments in the Fund that was not "solely incidental" to the broker-dealer's non-advisory services**

Plaintiff also fails to allege that his or any other broker-dealer that received Rule 12b-1

Fees from the Fund (through OFDI) provided investment advice to Fund shareholders that was

not "solely incidental" to the broker-dealer's non-advisory services.  To make such an allegation,

Plaintiff would have had to adequately plead that the advice that the broker-dealers provided to

Fund shareholders was not merely "attendant to" the other services that the broker-dealer

provided. *Thomas,* 2009 WL 2778663, at *5-6.  Yet, Plaintiff has not alleged any facts at all that

even suggest that a broker-dealer's purported investment advice to *any* Fund shareholder was

anything more than "solely incidental" to the broker-dealer's other services.

**3.      Plaintiff has not alleged that the Rule 12b-1 Fees that the Fund paid to OFDI, and that OFDI paid to broker-dealers, are "special compensation" *for* investment advice**

Plaintiff asks this Court to believe that "special compensation" under the IAA broker-

dealer exception is any payment other than transaction-based commissions.  Thus, according to

Plaintiff, *any* compensation paid to broker-dealers that is premised on the value of assets, such as

the Rule 12b-1 Fees expressly authorized by SEC Rule 12b-1 and FINRA Rule 2830,

automatically disqualifies broker-dealers from the broker-dealer exception to the IAA, regardless

of the nature and purpose of the payment. *See, e.g.,* Compl. ¶¶ 4, 29, 37.  But, Plaintiff's result-

oriented reasoning is faulty and ignores that the term "special compensation" *only* can apply to

compensation (whether asset-based or flat fee) *for* investment advice.

By describing "special compensation" as something other than "brokerage commissions,"

Congress plainly intended to differentiate "commissions" as "compensation for closing the sale,"

on the one hand, from "compensation, such as advice fees, for providing investment advice," on the other. *Thomas*, WL 2778663, at *7 (discussing Senate report). As the SEC has further explained, "special compensation" is consideration paid to the broker-dealer "in excess of that which he would be paid for providing a brokerage or dealer service alone"; it exists "only where there is a clearly definable charge for investment advice." 43 Fed. Reg. at 19226. The form that the compensation takes -- whether a flat fee or asset-based fee -- does not determine whether the compensation is "special compensation." *See Kassover*, 619 F. Supp. 2d at 34 (allegation that broker-dealer received brokerage commissions and "annual compensation based on a percentage" of the underlying securities was insufficient to allege payment of "special compensation" because it did not allege that defendant provided investment advice). Rather, "special compensation" is any compensation paid to a broker-dealer (i) for the broker-dealer's provision of investment advice to the client (ii) that the broker-dealer would not have otherwise provided without the additional compensation. *See Thomas*, WL 2778663, at *8 (recognizing that to merely state that compensation to the broker-dealer "pa[id] for everything," including investment advice, would "read[] the word 'special' out of the phrase 'no special compensation'").

Plaintiff has not pled that the Rule 12b-1 Fees that broker-dealers received from OFDI constituted "special compensation" for providing investment advice, let alone that the broker-dealers would not have otherwise provided the investment advice without the additional compensation. Nor could he make such an allegation in good faith. As the Fund's Rule 12b-1 Plan makes clear: (1) all of the Rule 12b-1 Fees that the Fund pays to OFDI are "asset-based;"

(2) none of those Rule 12b-1 Fees represents a payment for investment advice;[39] and, thus (3)

none of the Rule 12b-1 Fees constitutes "special compensation" within the meaning of the IAA.

This failure is yet another basis to reject Plaintiff's claim that the broker-dealers violated the

IAA.

### 4.   *Financial Planning Association v. SEC* did not suddenly render the payment of Rule 12b-1 Fees illegal

Plaintiff relies exclusively on *Financial Planning Association v. SEC* in attempting to

conflate "special compensation" for investment advice under the broker-dealer exception with

the broker-dealer's receipt of Rule 12b-1 Fees pursuant to the Fund's duly-enacted Rule 12b-1

Plan.  But, that decision nowhere mentions either Rule 12b-1 or Rule 12b-1 Fees, nowhere

addresses whether Rule 12b-1 Fees are "special compensation" for investment advice, and

certainly provides no foundation for Plaintiff's conclusion that a broker-dealer's receipt of Rule

12b-1 Fees automatically disqualifies the broker-dealer from the broker-dealer exception to the

IAA.  The *Franklin Templeton* court expressly agreed on this very point, finding that the

"*Financial Planning* case, on which plaintiff relies, is irrelevant to the payment of the

distribution fees (known as '12b-1 fees') that plaintiff challenges . . . .  The fees that were being

paid to the broker-dealers in the *Financial Planning* case were for services to customers

including fees for investment advice.  By contrast, in the present case, the fees paid under SEC

---

[39]     Indeed, courts consistently have recognized that Rule 12b-1 Fees compensate broker-dealers for providing services related to distributing fund shares and maintaining shareholder accounts, *not* for providing investment advice.  *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 WL 1903075, at *2 (S.D.N.Y. Aug. 27, 2004); *Kenton Capital, Ltd.*, 60 F. Supp. 2d at 15 (money to cover "legitimate broker expenses" is *not* "special compensation"); *Krinsk v. Fund Asset Mgmt, Inc.*, 715 F. Supp. 472, 490 ( S.D.N.Y. 1988) ("Payments to financial consultants to halt the out-flow of assets and improve shareholder service are consistent with [Rule 12b-1], so long as the primary intent is to increase the size of the Fund."), *aff'd*, 875 F.2d 404 (2d Cir. 1989).

Rule 12b-1 are fees paid by the fund . . . in connection with the distribution of fund shares."

2010 WL 2348644, at *8. This Court should reach precisely the same result.

**F.      Plaintiff Fails To State A Claim Against OFDI For Restitution Of Past Rule 12b-1 Fees Paid To Broker-Dealers**

Even if, wholly contrary to the law demonstrated above, Plaintiff has stated a claim to

void the Fund's payment of Rule 12b-1 Fees to broker-dealers pursuant to its Rule 12b-1 Plan,

Plaintiff is not entitled to restitution from OFDI for the past payment of any Rule 12b-1 Fees.

A party is not unjustly enriched, such that it must make restitution, where it performed

the services for which the payments in question were made. *See Van Zanen v. Qwest Wireless,*

*LLC*, 522 F.3d 1127, 1131-32 (10th Cir. 2008) ("There is no unjust enrichment if the claimant

receives the counterperformance specified by the parties' unenforceable agreement." (citation

omitted)); *In re Ivan F. Boesky Sec. Litig.*, 825 F. Supp. 623, 637 (S.D.N.Y. 1993) ("[R]escission

is not an available remedy where, as here, plaintiff has realized and paid for the full benefit of the

contract."), *aff'd*, 36 F.3d 255 (2d Cir. 1994). Plaintiff characterizes the Fund's payments to

OFDI under the Rule 12b-1 Plan as "unjust enrichment" for which OFDI is obligated to make

restitution to the Fund. Compl. ¶ 69. But, under its Rule 12b-1 Plan, the Fund agreed to pay

OFDI specified fees in exchange for OFDI arranging certain services related to the distribution

and maintenance of Fund shares. *See* Statement of Facts § B., *supra*. Plaintiff does not allege

that OFDI ever failed to provide the services for which the Fund has compensated OFDI

pursuant to the Rule 12b-1 Plan. Thus, Plaintiff cannot state a claim for restitution.

Nor is restitution available where a plaintiff fails to demonstrate that the defendant's

"retention of the benefit would be unjust." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 49 F.

Supp. 2d 298, 301 (S.D.N.Y. 1999). Here, OFDI indisputably used the Rule 12b-1 Fees that it

received from the Fund to compensate broker-dealers for providing services related to the

distribution and maintenance of Fund shares. Thus, Plaintiff cannot show that OFDI is *retaining*

a benefit conferred upon it by the Fund and his claim must fail. *See Kaye v. Grossman*, 202 F.3d

611, 616 (2d Cir. 2000) (reversing jury verdict of unjust enrichment as to defendant wife because

she did not actually benefit from loan made to husband).[40]

## II.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION WITH RESPECT TO PLAINTIFF'S STATE LAW CLAIMS

"[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy,

convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

*Accord Snyder v. Murray City Corp.*, 124 F.3d 1349, 1354 (10th Cir. 1997) ("When federal

claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction

---

[40]   In the event that Plaintiff's Section 47(b) claim is not dismissed, then the applicable statute of limitations restricts Plaintiff's restitution claim only to conduct that occurred since March 19, 2009. A plaintiff must bring a Section 47(b) claim within one year of discovery of the alleged violation and within three years of repose. *See Friedlob v. Trustees of the Alpine Mut. Fund Trust*, 905 F. Supp. 843, 855 (D. Colo. 1995). In a derivative action, the one-year-from-discovery limitations period begins to run when either a director or a shareholder could cause the claim to be brought on the company's behalf. *See International Ry. of Cent. Am. v. United Fruit Co.*, 373 F.2d 408, 414 (2d Cir. 1967). Here, Plaintiff alleges that the Fund's Rule 12b-1 Plan became unlawful on October 1, 2007, when the D.C. Circuit decision in *Financial Planning Assocs* took effect. *See* Compl. ¶¶ 50, 69. If true, then any of the Fund's Trustees could have asserted a Section 47(b) claim as of October 1, 2007. Moreover, because the Rule 12b-1 Fees at issue were disclosed in each of the Fund's prospectuses since at least October 1, 2007, each of the Fund's shareholders also possessed all information necessary to assert a derivative Section 47(b) claim since that time. *See* Statement of Facts § B., *supra*; *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 351 (2d Cir. 1993); *DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457, 466 n.18 (7th Cir. 1990). Thus, the limitations period on Plaintiff's Section 47(b) claim began to run no later than October 1, 2007. However, Plaintiff waited until March 19, 2010 to file this action. Under the statute of limitations, Plaintiff is barred from recovering for any alleged violations prior to March 19, 2009. *See Seidel v. Lee*, 954 F. Supp. 810, 813 (D. Del. 1996).

over pendent state law claims and allow the plaintiff to pursue them in state court."), *vacated in part on rehearing en banc*, 159 F.3d 1227 (10th Cir. 1998); *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1297-1298 (D. Colo. 2009) (Kane, J.) (dismissing federal claim and declining to exercise supplemental jurisdiction with respect to the remaining state law claim).

Under this well-accepted principle, if the Court dismisses Plaintiff's federal claim -- as it should -- the Court should decline to exercise jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

Dated: June 25, 2010

*s/ Stephanie Dunn*
Stephanie Dunn
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202-1043
Telephone: 303.291.2300
Facsimile: 303.291.2400
Email: sdunn@perkinscoie.com

William K. Dodds
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  212.698.3557
Facsimile:  212.698.3599
Email: william.dodds@dechert.com

David A. Kotler
DECHERT LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey  08540
Telephone:  609.955.3200
Facsimile:  609.955.3259
Email: david.kotler@dechert.com

***Attorneys for Defendants OppenheimerFunds Distributor, Inc. and John V. Murphy***

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2010, I electronically filed a true and correct copy of the foregoing **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY DEFENDANTS OPPENHEIMERFUNDS DISTRIBUTOR, INC. AND JOHN V. MURPHY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Arthur H. Aufses, III**
  aaufses@kramerlevin.com
- **Lauren Block**
  lblock@milberg.com
- **Jeffrey A. Chase**
  jchase@jcfkk.com,vlsanders@jcfkk.com
- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **David A. Kotler**
  david.kotler@dechert.com
- **Edward Thomas Lyons, Jr.**
  elyons@joneskeller.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Andrew Wilson Myers**
  amyers@jacobschase.com,cjones@jacobschase.com
- **Janine Lee Pollack**
  jpollack@milberg.com
- **Michael Champlin Spencer**
  mspencer@milberg.com

*s/ Stephanie Dunn*
Stephanie Dunn
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202-1043
Telephone: 303.291.2300
Facsimile: 303.291.2400
Email: sdunn@perkinscoie.com
*Attorneys for Defendants*
*OppenheimerFunds Distributor, Inc.*
*and John V. Murphy*